**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **CINDY HAWTHORNE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) Civil Action No. _____ |
| **v.** | ) |
| | ) |
| **BOARD OF REGENTS of the** | ) |
| **UNIVERSITY SYSTEM of** | ) **JURY TRIAL DEMANDED** |
| **GEORGIA,** | ) |
| | ) |
| **Defendants.** | ) |

**COMPLAINT**

Plaintiff **Cindy Hawthorne,** by and through her undersigned attorneys, HKM Employment Attorneys LLP, brings this civil rights action for relief and damages against Defendants **Board of Regents of the University System of Georgia**, based on the following factual allegations and causes of action.

**PRELIMINARY STATEMENT**

1.    Cindy Hawthorne was employed from November 2023 to October 2024 as Assistant Director of Equity and Civil Rights Compliance at Georgia State University ("GSU"), a member of the Board of Regents of the University System of Georgia. She challenges her termination under the retaliation provisions of Title

1

IX and Title VII of the Civil Rights Act of 1964, as well as the Rehabilitation Act, 29 U.S.C.A. § 794.

2.    Hawthorne was diagnosed with cancer within weeks of her hiring at GSU. Initially, her department reacted to her medical crisis with compassion and a series of accommodations including a month of leave, remote work, and a shift to a flex schedule to accommodate her transition to chemotherapy.

3.    But by the spring of 2024, Hawthorne's supervisor Chris Griffin, GSU's Director of Investigations, and the Executive Director of the Civil Rights Compliance unit Kieran Morrow began raising concerns that Hawthorne was falling behind on internal deadlines. In May 2024, Hawthorne was placed on a performance improvement plan ("PIP") that overtly described her lack of "productivity" and even cited her delay in completing interviews due to a one week sick leave.

4.    In the summer of 2024, Hawthorne faced pressure to return to in-office work despite her compromised immune system as a cancer survivor and chiding from Griffin that she needed to "pull her weight". As Hawthorne sought to extend her accommodations, GSU contrived grounds to extend the PIP.

5.    Hawthorne's placement on a PIP also coincided with a disagreement with the leadership of her department over the handling of a sexual harassment allegation by a graduate research assistant regarding her supervising faculty

2

member. In fact, the PIP explicitly faults Hawthorne for her assessment of the evidence regarding the claim and was imposed within weeks of her being directed to change her conclusions regarding potential liability.

6. Hawthorne's claims against the Board of Regents seek back pay and front pay, as well as lost benefits; noneconomic compensatory damages as to her Title VII retaliation claim; as well as her attorneys' fees and costs of litigation.

## **PARTIES**

7. Hawthorne is a citizen of the United States and the State of Georgia and was at all times relevant to this complaint employed by GSU as an investigator of its equity and civil rights compliance office, which is headquartered at GSU's Atlanta campus.

8. GSU, a four year academic institution, is a member of the University System of Georgia. Pursuant to O.C.G.A. § 20-3-51, the Board of Regents of the University system is the governing entity of its member institutions and is the party subject to suit for statutory claims by employees of universities within the system.

9. The Board of Regents is subject to suit under Title VII and as a recipient of federal funds is subject to liability under Title IX and the Rehabilitation Act.

**SUBJECT MATTER JURISDICTION AND VENUE**

10. Jurisdiction of this court is invoked pursuant to 28 U.S.C.A. §§ 1331 and 1343.

11. Venue is proper in this district and division under 28 U.S.C.A. § 1391(b)(1)-(2), as Defendant resides in and conducts business in this district and division and the acts or omissions giving rise to the claim occurred in the same venue.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

12. On March 13, 2025, Hawthorne filed a charge of disability discrimination and Title VII retaliation against the Board of Regents with the Equal Employment Opportunity Commission ("EEOC"). A copy is attached as Exhibit A.

13. On December 10, 2025, Hawthorne received a notice of Right-to-Sue. A copy is attached as Exhibit B.

14. Hawthorne timely files her Title VII claim within 90 days of her receipt of a Right to Sue.

**FACTUAL ALLEGATIONS**

15.    Cindy Hawthorne is a licensed attorney in the State of Georgia who is a certified mediator and a former EEO compliance investigator. She was hired in October 2023 as an Assistant Director of Equity and Civil Rights Compliance at GSU.

16.    Hawthorne's principal responsibilities involved fact-finding and investigation of employee and student complaints of violations of federal civil rights laws and campus conduct guidelines.

17.    Hawthorne reported directly to Chris Griffin, GSU's Director of Investigations. Griffin also serves as Deputy Title IX coordinator.

18.    Weeks after joining GSU, Hawthorne learned that she had cancer and began a protracted battle with the disease that consisted of surgery and an ongoing regimen of chemotherapy.

19.    Despite receiving a devastating diagnosis, Hawthorne continued work and delayed her surgery until December 2023 to avoid an immediate staffing gap in her department. GSU permitted Hawthorne to take a medical leave of absence until January 2024.

20.    When Hawthorne was cleared to return, she was allowed to telework. She also applied for a broader set of scheduling accommodations based on her chemotherapy regimen and the inevitable physical toll treatments took on her.

Hawthorne requested a shift to a seven day flex schedule, and discretion to extend project deadlines as well as excused time off to attend medical appointments.

21.     In March 2024, Hawthorne's accommodations were approved through May 2024. But the senior leadership in the Equity and Civil Rights Compliance Unit began holding internal meetings in March about replacing Hawthorne, in part because  of concerns about her delayed pace on completing work projects since her return from medical leave.

22.     In the March-April time frame, Hawthorne was also assigned to investigate a graduate research assistant's allegation of sexual harassment against her supervising professor in the life sciences department.

23.     It was Hawthorne's view that the allegations, which included substantial details and corroborating evidence, merited a full fledged Title IX inquiry. In addition, because the research assistant was a compensated GSU employee, Hawthorne advised that the university's exposure extended to potential Title VII liability.

24.     In late April 2024, Hawthorne was directed to revise her findings and rewrite her report regarding the outcome of the harassment investigation. The Executive Director of the Civil Rights Compliance unit Kieran Morrow questioned

the credibility of the allegations and whether the content of the allegations presented an actionable hostile environment claim.

25.    At one point in mid April, the Director of the Investigation Unit Chris Griffin advised Hawthorne that Morrow had developed concerns about Hawthorne's job performance.

26.    On May 3, 2024, two days after her accommodation expired and less than ten days after the order to revise her investigative findings regarding the harassment allegation, Hawthorne was notified that she would be placed on a 90 day performance improvement plan and that her next investigative report would determine whether she would remain employed.

27.    Hawthorne perceived the comment about the importance of the next investigative report to be an implicit warning that she needed to be more cautious about recommending liability in any situation where the leadership of the department was skeptical of her assessment.

28.    The contents of the PIP contained repeated references under the heading "productivity" to the time it took Hawthorne to complete investigative interviews and reports with no acknowledgement of the portion of Hawthorne's accommodation that specifically afforded her extended deadlines. At one point, the

PIP even mentioned that after being asked to schedule a round of witness interviews, Hawthorne was out on sick leave for a week.

29.    In addition, the PIP discussed in some detail the sexual harassment investigation regarding the research assistant's complaint. Hawthorne was admonished for failing to adequately assess relevance or to properly weigh contested facts.

30.    The PIP's critical review of Hawthorne's capacity to perform her job differed from the positive feedback she had received after her 90-day evaluation and in regular meetings with Griffin.

31.    Hawthorne immediately raised concerns that the PIP bypassed GSU's normal progressive disciplinary protocol, which includes verbal warnings and written warnings; and that satisfying the PIP might interfere with her capacity to preserve some of the scheduling accommodations she was seeking to extend.

32.    The process for renewing Hawthorne's accommodations dragged on for several months during the summer of 2024. In the interim, Griffin inquired several times about whether Hawthorne was able to return to at least a hybrid in-office schedule. At one point during a progress review meeting regarding the PIP, Griffin commented that there was a perspective in the department that Hawthorne was "not pulling her weight", an observation Hawthorne connected to

the continued modifications in her schedule that were still observed while the accommodation extension was under review.

33.     Not until August 7 did GSU extend Hawthorne's accommodation.

34.     On August 9, when the PIP was set to expire, Griffin extended it for 30 days solely on the grounds that Hawthorne had inserted an inapplicable paragraph from a template into a draft report.

35.     Hawthorne encountered another set of health challenges, including a six week round of radiation treatment and stress related anxiety, that required her to return to medical leave from August 20 to September 9, 2024.

36.     While Hawthorne was on leave, she received an email from Griffin advising her that the PIP would be extended yet again to late September on the grounds that her medical leave had limited the time for her review.

37.     Approximately two weeks after the PIP ended, on October 10, 2024 Hawthorne was notified of her termination, ostensibly for failing to show sustained improvement under the PIP. But at the conclusion of each PIP deadline, GSU failed to offer Hawthorne any meaningful assessment that she had not complied with or demonstrated progress based on the metrics of the PIP.

38.     While GSU's position statement to the EEOC touts the fact that the university provided Hawthorne generous accommodations and two periods of

9

leave during her battle with cancer, the actions of her leadership team paint a less charitable picture: the inevitable slowdown in her production as she endured chemotherapy contributed to her placement on a PIP. Her leaders pressed her to resume a pace for which she was not physically prepared, and twice when she sought to extend her accommodations, her department followed with an extension of the PIP.

## CAUSES OF ACTION

## COUNT ONE

**(discriminatory termination under the Rehabilitation Act, 29 U.S.C.A. § 794)**

39.    Plaintiff realleges and incorporates the factual allegations in this complaint as though fully set forth herein.

40.    The Rehabilitation Act precludes discrimination based on disability by any entity receiving federal funds.

41.    The physical and mental impact of Plaintiff's post operative care and the effects of chemotherapy and radiation constitute a qualifying disability under the Rehabilitation Act.

42.    Plaintiff's disability was a determinative, but-for factor in her termination.

43.   As a result of Defendant's discriminatory conduct, Plaintiff has suffered economic damages, including lost wages and benefits; Plaintiff is also entitled to recover her attorney's fees and costs as permitted by law.

## COUNT II

### (Title IX retaliation)

44.   Plaintiff realleges and incorporates the factual allegations in this complaint as though fully set forth herein.

45.   Under the 1972 Education Amendments to the Civil Rights Act of 1964 (Title IX), "no person…shall, on the basis of sex, be denied participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving federal financial assistance." 20 U.S.C.A. § 1681(a).

46.   Plaintiff possess an implied right of action under Title IX to assert a retaliation claim for opposing intentional discrimination based on sex.

47.   Plaintiff engaged in protected activity under Title IX by opposing gender based harassment of a student in a federally funded educational institution.

48.   Plaintiff's protected activity is causally connected to her placement on a performance improvement plan that eventually led to her termination.

49.   As a result of Defendant's retaliatory conduct, Plaintiff has suffered economic damages, including lost wages and benefits. Plaintiff is also entitled to recover her attorney's fees and costs as permitted by law.

## COUNT III

### (Title VII retaliation)

50. Plaintiff realleges and incorporates the factual allegations in this complaint as though fully set forth herein.

51. Plaintiff engaged in protected activity under Title VII by opposing gender based harassment of a research assistant employed by Georgia State University.

52. Plaintiff's protected activity is causally connected to her placement on a performance improvement plan that eventually led to her termination.

53. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered economic damages, including lost wages and benefits; compensatory damages, including emotional pain and suffering; and embarrassment and humiliation. Plaintiff is also entitled to recover her attorney's fees and costs as permitted by law.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendants and order the following relief as allowed by law:

1. Permanently enjoining Defendant from engaging in said unlawful practices, policies, customs, and usages set forth herein and from

continuing any and all other practices shown to be in violation of applicable law.

2. The award to Plaintiff of economic damages under the Rehabilitation Act and Title IX.

3. The award to Plaintiff of compensatory damages under Title VII.

4. The award to Plaintiff of attorney's fees and costs of this action.

5. The award to Plaintiff of prejudgment and post-judgment interest at the highest rate.

6. The award to Plaintiff of such other equitable relief as the Court may deem justified.

## JURY TRIAL DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Respectfully submitted this 10th day of March, 2025.

**HKM Employment Attorneys LLP**

*s/Artur Davis*
Artur Davis[1]
ASB-3672-D56A
2024 3rd Ave. North, Suite 212
Birmingham, AL 35203
Direct: 205-881-0935
adavis@hkm.com

---

[1]Artur Davis will promptly file for admission *pro hac vice* as an attorney of record in this action. Mr. Davis is licensed in the state of Alabama and the District of Columbia.

13

Jerilyn Gardner
Georgia Bar No. 139779
3344 Peachtree Rd. NE, Suite 800
Office #35
Atlanta, GA 30326
Direct: 404-446-9544
jgardner@hkm.com

**Counsels for Plaintiff Cindy Hawthorne**